EASTERN Drs.
June, 1841.

CARROLLTON
RAIL ROAD CO.
vs.
MUNICIPALITY
NO. 2.

19L 62
45 1411

19L 62
47 104

19L 62
50 1257

## CARROLLTON RAIL ROAD COMPANY *vs.* MUNICIPALITY

### NO. TWO.

APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF

NEW ORLEANS.

Ancient plans of a city are admissible in evidence to prove the boundaries of lots sold in reference thereto, and the direction of streets so far as they may extend, although not including the *locus in quo;* and especially when one of the parties claims under those who caused the plans to be made.

Where a canal and basin figure on the original plan of a city, but are always used and sold by the proprietors, they will be considered as private property.

In order to dedicate property to *public uses*, there must be a plain and positive intention to give and one equally plain to accept. The *form* is not material.

This suit is in the nature of a petitory action in which the plaintiffs seek to be confirmed in their title to and quieted in possession of the Canal Gravier and Basin, and also a square of ground called Place Gravier; situated in Poydras street near

and at its junction with Baronne street, in the city of New Or- EASTERN DIS.<br>*June,* 1841.
leans.

The defendants set up claim to the premises in the following CARROLLTON<br>RAIL ROAD CO.<br>*vs.*<br>MUNICIPALITY<br>NO. 2.
resolution adopted in council the 31st of July, 1838 :

" Whereas the New Orleans and Carrollton Rail Road and
Banking company have in violation of the law and the rights of
the public, continued to inclose the property known as the site
of Gravier's Canal : *Be it therefore resolved,* that the said com-
pany be and they are hereby required to remove or cause to be
removed all fences and barriers erected by them, or by persons
in their employ, around any portion of said grounds, being in
the centre of the continuation of Poydras street, below the
Poydras market, within ten days, under the penalty of $25 per
day, from the expiration of that time until the said fences or
barriers be removed : such fine or fines to be recoverable before
any court of competent jurisdiction for the benefit of this Mu-
nicipality."

On the 17th day of May, 1838, previously to the above, the
council of the 2d Municipality adopted the following resolu-
tion :

" Resolved, that the Carrollton Rail Road and Banking com-
pany be and they are hereby required to remove within ten
days, the fence said company have erected around a portion of
ground in the centre of Poydras street, originally destined for
a canal; said company having no right to change the destina-
tion of said ground, nor to enclose the same, without the con-
sent of all parties concerned, and of this council; and if said
fence be not removed within ten days, said company shall be
liable to a fine of ten dollars per day until it is removed."

The plaintiffs pray that the Municipality be perpetually en-
joined from proceeding in any way to carry said ordinances or
resolutions into effect, or otherwise disturbing the title and pos-
session of the plaintiffs; and that said resolutions or ordinances
be annulled and declared void. The defendants denied that
the plaintiffs were the owners of the premises in dispute, and

EASTERN DIS.
June, 1841.

CARROLLTON.
RAIL ROAD CO.
vs.
MUNICIPALITY
NO. 2.

claimed the exclusive use and administration of them as dedicated to public use, as public places.

In September, 1838, the council of the 2d Municipality passed another resolution to the following effect:

"Resolved, that the attorney of this Municipality be and is hereby authorized and required to take such legal steps as may be necessary in order to obtain a legal decision vesting in the public the right of use to all that portion of ground, known as Gravier's Canal and Basin," &c.

The plaintiffs subsequently instituted another suit alleging the defendants slandered their title to three several pieces of property, including two small squares of ground and the Canal Gravier. They pray that the defendants be required to exhibit any title they have and to be forever enjoined from setting up or claiming title thereto.

The defendants set up claim to the premises as public places, dedicated to public uses in the original and subsequent plans of the faubourg St. Mary, as originally laid out and recognized by B. & J. Gravier, &c.

Upon the issue, thus made up, and the testimony, consisting of plans, titles, &c., the case was submitted to the court. There was judgment for the plaintiffs, declaring them to be the true owners of Gravier's Canal and Gravier's Basin; and that the *Place Gravier*, or Gravier Square, be adjudged to be public property under the administration of the 2d Municipality; and that the latter pay costs. Both parties joined in the appeal to this court.

*L. Janin & Thos, Slidell,* for the plaintiffs.

*Carter & Eustis,* for the defendants.

*Garland, J.* delivered the opinion of the court.

The plaintiffs allege they are the lawful owners and proprietors and are now in possession of all that portion or space of ground in the faubourg St.Mary, known by the name of the site

EASTERN DIS.
*June*, 1841.

CARROLLTON
RAIL ROAD CO.
*vs.*
MUNICIPALITY
NO. 2.

of the Canal Gravier, as will be more fully shown by reference to a plan annexed. They say that the council of the Municipality No. 2, in violation of their rights and assuming legislative authority not embraced by their charter, have passed two ordinances requiring the plaintiffs under heavy penalties to tear down and remove certain enclosures which they have made around a piece of ground in Poydras street, which was a part of the site of said Canal Gravier. That these resolutions are illegal, oppressive and in violation of long known rights, which have on various occasions been recognized and admitted by the former corporation of New Orleans and the present defendants. Wherefore they pray an injunction may issue for the protection of their rights, and the Municipality enjoined from proceeding in any manner to carry these ordinances into effect, or otherwise disturbing their title and possession, and that said ordinances be declared null and void.

An injunction was granted, the defendants cited and for answer say:

1. They deny the ownership of the plaintiffs to the piece of land described in the petition.

2. They deny possession or interest in the plaintiffs; and aver that the space is a public street or place of which the public has the use, and that neither the plaintiffs or any other person can have any ownership, property or possession of the same.

3. The pretended possession of the plaintiffs is a disturbance of the public right to the use, the place having ever since the establishment of the faubourg been subject to a right in the public of way and view.

4. That by the ancient plans of the faubourg St. Mary, the space in question was dedicated as a public street and has always been used as such.

5. That the original proprietors of the faubourg sold the lots with reference to the right of view and way on said space, and among the ancient plans they particularly rely on that made by Carlos Trudeau, the 1st April, 1788, that made by the same person on the 14th of May, 1796, and on that made by Jean

EASTERN DIS.
June, 1841.

CARROLLTON
RAIL ROAD CO.
vs.
MUNICIPALITY
NO. 2.

Gravier on the 5th of June, 1805, by which he illegally attempted to encroach upon said space, also on the plan made by the city surveyor in the year 1809.

6. That by the plan of 1809, the previous plan of Gravier, which had never been accepted by any competent authority, was repudiated and the ancient limits of the street restored, which plan was deposited in the archives; as also a plan of the 24th of April in the year 1788.

7. They say, by law the council has the right of regulating by ordinance the use of the streets, and that the ordinances in question are legal. They further deny every thing not expressly admitted.

The answer concludes by praying a dissolution of the injunction; that it be decreed said place belongs to the public, with all its services and uses; that the plaintiffs be forever enjoined from interrupting the possession and use of it, and that they (the defendants,) be authorized to exercise all rightful acts of legislation and police over it.

Sometime after the filing of this answer the plaintiffs filed a supplemental petition in which they set forth their title to the ground in question stating the various mesne conveyances by which it was derived from Bertrand Gravier, alleging the defendants had slandered their title, threatened them with a suit, and did other acts calculated to injure them and reduce the value of their property. They also alleged various ratifications and recognitions of their title by the old corporation of New Orleans and the present defendants. They pray the defendants may be compelled to exhibit their title, if any they have, that it be rejected and they quieted in their possession. To this the defendants answered, setting up the rights of the public and the various plans of the faubourg, which they say show a dedication to public use as a public highway or open space. Thus the action was changed from the possessory character which it at first presented, to a petitory form.

On the trial the plaintiffs presented a regular chain of title from Bertrand Gravier, through Jean Gravier and the Orleans

Navigation company to themselves, all of which acts have been ratified by the curator and heirs of Jean Gravier deceased.

The defendants for the purpose of showing that the place in question has been dedicated to public use, offer in evidence a figurative plan of a portion of the faubourg St. Mary, drawn by Laveau Trudeau, dated the 1st of April in the year 1788, which represents the levee, and Magazine, Camp and St. Charles streets only, with a single range of lots on the west side of the latter, and Gravier, Poydras, Girod, Julia, and St. Joseph streets, with the exception of the former, running nearly at right angles. Trudeau, in his explanation of this plan, says it has three cross streets with four perpendicular and one oblique, ("*trois rues de traverse avec quatre rues perpendiculaires et une oblique.*") The introduction of this plan as evidence was objected to by the plaintiffs, on the ground it was never recognized by either Bertrand or Jean Gravier, signed by them, or accepted by the Spanish authorities or the City Council, nor does Trudeau sign it as a public officer. These are questions of much importance not only in this case but to the public and though it is not very necessary to decide them in this case, yet it is as well to say, there is no other plan of the faubourg known before this. Bertrand Gravier certainly submitted some plan to the Spanish governor, according to the evidence. This went into the archives of the city council as early as 1804, as the plan of that part of the faubourg, and both Bertrand and Jean Gravier sold lots in conformity to it. We think it is now too late for a party claiming under those persons to object to it. It appears from the records of the council to have been received by them as such, and we think it properly admitted in evidence to prove the boundaries of the lots and the direction of the streets, so far as it extends. But it includes no part of the premises in dispute.

*Ancient plans of a city are admissible in evidence to prove the boundaries of lots sold in reference thereto, and the direction of streets so far as they may extend, although not including the* locus *in quo; and when one of the parties claims under those who caused the plans to be made.*

The plan No. 2, offered by the defendants, purports to be a copy on a reduced scale of that of the 1st of April, 1788. When it is carefully examined it is evident it is a correction of two plans, one made on the 24th of April, 1788, and the other

EASTERN  DIS.
June, 1841.

CARROLLTON
RAIL ROAD CO.
vs.
MUNICIPALITY
NO. 2.

the 14th of May, 1796, but when corrected is not known, though probably in 1804, when Trudeau was called on for a plan of the faubourg.  The first statement is that it is a plan on a reduced scale of the previous one which is represented on it, by the letter A placed at four different points.  The streets on the original plan are named on this in the explanation but no additional streets are named in it.  In the note dated May 14th, 1796, it is said Carondelet, Baronne, and Philippa and Perdido streets, were projected or added with a square or plaza, and in another note it is said the copies of these plans were given to B. Gravier, one for himself and the other for Mr. Sarpy, as purchaser of a portion of the lots which figure in the copies.  This explains the reason of this last plan being made or projected.  Sarpy had contracted or was about contracting for the purchase of some lots, and the plan was made at the request of one or both, to enable them to complete the purchase.  There is no evidence in the record the sale ever was completed, so the original *projet* remained in the possession of Trudeau, and the copies in the possession of Gravier, or he and Sarpy, until Trudeau in 1804 sent them to the city council in a corrected form.  There is not the least evidence that the public authorities ever saw the reduced plan or that of 1796, until the period mentioned, and in the meantime, it is clear from copies of sales that Bertrand or Jean Gravier, probably the latter, had changed his mind as to the plan of that part of the city, which he had a right to do, as no lots were *sold* in conformity to the plan of 1796, nor is there any evidence of any acceptance or use by the public of the streets that had been projected.

The defendants next offer a plan made by Jean Gravier, at what precise period is not known, but we find it referred to in sales as early as 1802 and 1804, and deposited in a notary's office annexed to an authentic act on the 5th June, 1805, on which Poydras street is represented as one hundred and ten feet wide, instead of seventy, with a space in the centre, for a canal, forty feet in width, and at the point where Baronne

street would have intersected it on the north side, we find a piece of ground one hundred and eighty feet square, called a *Basin,* and north of that a parallelogram called *Place Gravier.* This plan the defendants offer, to prove a change in the original one, which they complain of, and yet wish to take advantage of it. They and their predecessors say Gravier originally made Poydras street seventy feet wide and dedicated it to public use; that he afterwards added forty feet to it against their wishes and positive orders, but as he has done so, they now allege he intended to give it to them together with the Place Gravier: all the other plans and acts of sale offered by the defendants go to show that Jean Gravier always acted on this plan, and when, at a much later period, he made another plan extending the faubourg from Philippa to St. Paul street, the canal is represented as being in the centre of Poydras street. This latter plan, it is not denied, the old corporation of New Orleans accepted; at least, there is no evidence they ever repudiated it. If they have not accepted it, no other plan of that part of the city is shown to exist, and very little support to the defence is obtained from it.

The resolutions of the city council of the 2nd of June, and the 25th of August, 1804, show clearly that there was no plan in the archives of the faubourg St. Mary, as they call upon Trudeau to furnish one, which he did, but there is nothing to show Gravier knew any thing of this call, or approved of what Mr. Trudeau did. On the contrary, it is known that previous to these dates he was selling lots by the plan produced, and filed by him in June, 1805. In May, 1806, the council ordered another plan to be made to determine the width of the streets, which does not appear to have been executed.

From this latter period to March, 1809, the city council were silent, but on a representation made at that time by the city surveyor, that Jean Gravier was making various encroachments in the faubourg, which are indicated by marks on a plan which the surveyor submits; the mayor was authorized and directed to sue Gravier, to arrest him in his encroachments and

EASTERN DIS.
June, 1841.

CARROLLTON
RAIL ROAD CO.
vs.
MUNICIPALITY
NO. 2.

in future to maintain the integrity of the primitive plan of the faubourg.    The encroachments or *empiétemens* indicated, are at various places.    On the levee near the faubourg Delord, on Lafayette square, in Baronne street below Gravier, at or near the intersection of Baronne and Poydras streets, and other places, but nothing is said as to the spot in dispute.    Nothing appears to have been done under this resolution until the year 1818, when a suit was commenced against Jean Gravier to compel the removal of certain buildings and works which he had erected on Lafayette square.    A reasonable inference to be drawn from the continued silence and inaction of the corporate authorities, is, that Gravier desisted from the encroachments which were unauthorized, and they did not disturb his basin and canal, because they supposed he had a right to make and use them.

Where a canal and basin figures on the original plan of a city, but are always used and sold by the proprietors, they will be considered as private property.

All the evidence, both for plaintiffs and defendants, shows that Jean Gravier always considered the basin and canal as his own.    He used them; he contracted with Goodwin and others to enlarge and deepen the canal; he always asserted and maintained his possession until 1825, when the property was seized and sold under execution to Gordon, who purchased for the Orleans Navigation Company.    They remained in undisturbed possession until 1833, when a sale was made to the plaintiffs.    Immediately after the sale the old corporation of the city recognized the rights of the Rail Road Company, by receiving from them a grant of two pieces of ground, for the purpose of prolonging Baronne and Poydras streets, in consideration of which, they gave the company the use during the existence of their charter of a portion of the Place Gravier, to be used as turn-outs for their road, a shelter or depot for their cars, and other purposes specified in the deed.    In July, 1836, the defendants recognized the interest and right of the plaintiffs by a resolution calling on them to fill up the canal, and in the month of September, in the same year, actually purchased from them all the space between Baronne and Circus streets, and have built a market house on it, which was one of the

conditions of the sale. But almost as soon as the sale was
completed and the mandate obeyed, the municipal authorities
turn about and gravely say there is a mistake in all that has
been said or done. That plaintiffs have no title and they have
one, notwithstanding the plaintiffs have always been in posses-
sion and the defendants have protested heretofore that the com-
mon grantor had no right to change a plan by which this space
is given to us. The conviction of error on the part of the mu-
nicipality, is rather too sudden to operate in a like manner on
minds not interested in the question, and we can find no argu-
ment to sustain it in the face of their own acts.

Eastern Dis.
June, 1841.

CARROLLTON
RAIL ROAD CO.
vs.
MUNICIPALITY
NO. 2.

What constitutes a dedication to public use, has been so
much discussed in this court lately, as not to need repetition
now. There must be a plain and positive intention to give
and one equally plain to accept. The form is not material.
We see nothing in the evidence to prove a dedication of the
basin and canal; on the contrary such a purpose was always
repudiated by Jean Gravier. Upon that point we see but little
difference between this case and that of Livaudais vs. the 2nd
Municipality ; 16 La. Rep., 509. If any dedication was ever in-
tended it remained inchoate, until some evidence of acceptance
was exhibited. None has been shown. The defendants or the
public never used the basin or canal in any manner, and it
was in fact not susceptible of use, except by Gravier and his
agents or lessees, who used it to transport wood from the swamp
and to supply clay for making bricks. As the defendants have
failed to prove a dedication, they have no legal title to the pre-
mises in question.

*In order to
dedicate pro-
perty to public
uses, there must
be a plain and
positive inten-
tion to give and
one equally
plain to accept.
The form is not
material.*

The plaintiffs complain of the judgment of the Parish Court,
because the judge declines deciding to what uses they should
apply the canal and basin, and ask us to amend the judgment
in that particular. This request we must decline as we do not
think it proper to give such an opinion in the present state of
the case. The plaintiffs have a regular title from Jean Gravier
and are vested with all his rights, as to the manner they may

EASTERN DIS.
June, 1841. choose to exercise them we will not express an opinion in advance.

The judgment of the Parish Court is therefore affirmed in all respects, except that the plaintiffs shall, during the existence of their charter, have the use of that portion of the *Place Gravier* set forth in the contract made with Dennis Prieur, Mayor of the city of New Orleans, on the 18th day of the month of July, in the year 1833. The defendants to pay the costs of this appeal.