## No. 9661.

### Heirs of Leonard vs. City of Baton Rouge.

In order that recovery be had under R. S. sec 318, the following conditions must concur, viz:

*First.* The evidence must show that the plaintiff is a riparian proprietor of the property in dispute.

*Second.* That there has formed an accretion or batture, in front of same, more than is necessary for public use.

*Third.* That defendant withholds this accretion or batture.

Batture is an elevation of the bed of a river under the surface of the water; but it is sometimes used to signify the same elevation when it has risen above the surface.

The term batture is applied, principally, to certain portions of the bed of the Mississippi river which are left dry when the water is low, and are covered again, either in whole or in part, by the annual swells.

The banks of a river are not sold; they pass as an accessory of the contiguous land when sold, and the property of the bank belongs to the adjacent proprietor.

When the sovereign grants land contiguous to the river without mentioning the bank, it passes as an accessory, and it must do so by the deeds of private citizens.

Under the laws of France and Spain, batture did not belong to the cities and towns as riparian owners, in the sense of actual and indefeasible ownership, but solely for the purposes of administration.

The possession of the *locus in quo* by a city simply for administration, and not inconsistent with the ownership in the riparian proprietor, and destined in its nature to terminate upon the happening of a certain contingency, cannot be pleaded against the latter as a basis for prescription.

Land, after being set apart for public use, and enjoyed as such, and private and individual rights acquired with reference thereto, the law considers it in the nature of an *estoppel in pais*, which precludes the original owner from denying the dedication.

A city or town is not authorized to construct permanent edifices upon the batture, to the detriment of the riparian proprietor, or to the injury or inconvenience of the public, but it may construct those which may be of public utility and advantage.

The use of the property as a landing and wharf for the reception of coal-boats and coal, is a public use, the public character of which is not destroyed by the fact that it is temporarily farmed out to particular parties.

The original proprietors are not entitled to recover the revenues paid by such parties as a consideration for the privileges, because such revenues result from the exercise of the public easement itself, and not from use independent thereof.

Heirs of Leonard vs. Baton Rouge.

APPEAL from the Seventeenth District Court, Parish of East Baton Rouge. *Burgess, J.*

*C. D. Favrot, K. A. Cross* and *James Wilkinson* for Plaintiffs and Appellants :

There is a perfect and an imperfect dedication of property to public use under both the civil and common law. The former is a donation and passes the fee; the latter is a qnalified dedication, and under the common law is termed an " easement," under the civil law " a servitude of public use." 30 Ann. 64; Rev. C. C. art. 482; Dillon on Mun. Corp., 3d ed., par. 633.

Any other classing of this qualified dedication creates a distinction without a difference. The rules of the Civil Code concerning servitudes are all applicable to the present cause. Torres vs. Falgoulst, 37 Ann. 506.

An implied qualified dedication can never result under the civil law from long continued user, where such rights or servitudes require the act of man to use them. Rev. C. C. 765, 767.

The common law differs in this respect. The leading case of Cincinnati vs. White, 6 Peters 431, is shown herein to be in our favor.

No one is presumed to give away his property, and he who avers a divestiture of ownership must prove it clearly. Torres vs. Falgoulst, 37 Ann. 506.

Where a servitude of passage has been dedicated on a map or plan for the use of the public— and the boundary of that street has not been defined, the measure of the use by and the needs of the public will regulate the extent of the dedication—and defendant, by virtue of such dedication, cannot claim property which is in blank on the plan, neither used or necessary for a street, and seek to use the same as a right of common, right of way for a railroad, and lease out the exclusive use of the balance to private parties. R. C. C. 722, 780, 753.

Where property is claimed to have been ceded or transferred by individuals in this State, the principles of the civil law and articles of the Civil Code govern the case. Torres vs. Falgoulst, 37 Ann. 498.

Defendant's pleas are grossly inconsistent.

No dedication of this property either absolute or qualified has been shown.

No public use thereof has been shown.

Defendant has failed to put forward the defense that Article 455 of the Revised Civil Code gave the public a *legal* servitude on this property.

This defense would have been a judicial admission of ownership in favor of plaintiffs, and would have entitled us on the face of the pleadings to the rents and revenues collected by the city from private parties. Rev. C. C. 455; 31 Ann. 65; Rev. C. C, 722.

Plaintiffs, as owners of this land, have the exclusive right under the circumstances to receive any rents or profits which same may have produced. Deniston vs. Walton, 8 Robinson; Chase vs. Turner, 10 La. 20; Nicholls vs. Byrne, 11 La. 173; Dillon on Mun. Corporations, par. 633; Carrollton R. R. Co. vs. Winthrop, 5 Ann. 36; Heirs of Duverge vs. Salter & Marcy, 6 Ann. 450; Lyons vs. Hinckley, 12 Ann. 655.

*Favrot & Lamon* and *T. Jones Cross* for Defendants and Appellees:

1. At the time of the cession of Louisiana by Spain to France, and by France to the United States, and at the time when the United States took possession of the Florida parishes, all that portion of the land covered by the highest rise of the water to its lowest ebb, in front of Baton Rouge, belonged to the town. 9th Law, Tit. 20, of Partidas 3; 23d Law, Tit, 32, of Partidas 3; Recopilation Law 1, Book 4, Tit. 13; Law Toro, 1st Tit. 7th, Book

5, Recopilation Law 1, Tit. 7, Book 5; Novissema Recopilacion, Book 7, Tit. 16, Law 1; N. O. vs. U. S., 10 P. 724 to 736 ; 3 M. 309, 303; 7 N. S, 90, *et seq*., 634; 5 L. 166, 167, *et seq*.

2. The Supreme Court of this State must conform its decisions to those of the Supreme Court of the United States, on questions involving the alienation of the public domain and the interpretation of treaties and Acts of Congress. 3 Ann. 56 ; 4 Ann. 421.

3. To **succeed** under Section 318 of R. S. of 1870, plaintiffs must be : 1st. Riparian owners. 2d. Entitled to the right of accretion. 3d. A batture must be formed in front of their land, more than is necessary for public use. 4th. The city of Baton Rouge must withhold it from the owner of the riparian property; a portion of the batture should not be necessary for public use.

4. Plaintiffs, in order to claim the river front, must show as a condition precedent that when the property was divided into lots the alluvian was of sufficient height and magnitude to be susceptible of private ownership. 7 N. S. 625 ; 9 M. 656 ; 6 M. 19.

5. If the presumption is that the riparian owner does not in a sale convey the alluvian susceptible of private ownership (35 Ann. 210), the converse of the proposition should also be true, that when there is no batture outside susceptible of private ownership, the owner is presumed to sell everything to the water's edge.

6. The right of the city of Baton Rouge to the river front claimed by plaintiff cannot be divested by any act of the Legislature, except one in the exercise of the right of eminent domain and for valuable consideration. U. S. Constitution, art. 1. secs. 4 and 9.

7. The division of an empire works no forfeiture to pre-existing vested rights to property, and this maxim is equally consonant with the common sense of mankind and the maxims of eternal justice. Tevret vs. Taylor, 9 C. 43, 50 ; Trustees of Dartmouth College vs. Woodward, 4 W. 651, 707; Society of the Gospel vs. New Haven, 8 W. 480.

8. If plaintiffs ever had rights to the river front, they have divested themselves by dedication to public use and their acquiescence in its use as a *locus publicus*. In this no particular form is necessary. All that is required is the assent of the owner and the fact of its being used for the public purposes intended by the appropriation. Cincinnati vs. Whites, lessees, 6 P. 431; Beatty et als. vs. Kurtz et al., 2 P. 566; Town of Pawlet vs. Clark et al., 9 C. 292; Municipality vs. Cotton Press, 18 L. 122; Livaudais vs. Municipality, 16 L. 509; David vs. Municipality, 14 Ann. 873 ; 3 Ann. 282; 18 Ann. 560 ; 22 Ann. 526.

9. After dedication is made and private and individual rights have been acquired with reference to it, the law considers it in the nature of an estoppel *in pais*, which precludes the original owner from revoking such dedication. 6 p. 438.

10. If by a plan property dedicated to public use extends to the river's edge, it is sufficient to show its destination to public use. N. O. vs. U. S., 10 P. 714.

11. When maps establish dedication and by use for a long period of time, it is conclusive. 10 P. 718.

12. Presumption of dedication exists in civil law. 10 P. 721.

13. We commend to plaintiffs the first broad and general principle of law mentioned in the "*Corpus Juni Civilis*," to wit: *honeste rivere*, " to act honestly," from which is derived the maxim, *polliciti servare*, "when we make a promise to keep it," and the necessary corollary, *turpe est fidem fallere*, "it is shameful to disappoint expectations one has authorized."

14. The city of Baton Rouge, the defendant, has undoubted right and authority to administer and dispose of its river front. The levee forms the bank of the river. 18 L. 175, last paragraph; C. C. 448, 446; R. C. C. 455, 457. *Ergo*. If the use of the streets in Baton Rouge is public and their police regulated by the corporation, the latter has a right to raise Front street by allowing the passage of a railroad thereon. If the embankment which is built is a levee, which protects lots No. 1 to 5 from overflow, the use of

the property in front of the levee remains public, and the city exercises rights over it consistent with law.

The opinion of the Court was delivered by

WATKINS, J.   Plaintiffs, alleging themselves to be the heirs of Gilbert Leonard, deceased, instituted this suit for the recovery of a tract of land, purchased by their ancestor in 1810, of Celestine De St. Maxent, and which he caused to be laid off and divided in town lots; and averred that same constituted one of the environs of the city of Baton Rouge, and is designated upon the map of the city as Leonard town, and which extends along the Mississippi river, between the terminal points of North Boulevard and Convention streets, in that city.

They allege that Leonard town was laid off to Front street, but the control and administration of the property, on the river side of said Front street, has been *assumed* and *retained,* on the ground that it was necessary for public uses; and that, for many years, a large strip of batture, between the river landing and North Boulevard and Front streets, has not been required for any public use; but, on the contrary, the defendant has continuously, for a period of five years, rented said property to private parties, and has been deriving a revenue therefrom.

They claim $6000 accrued revenues, and $1000 per annum, accruing revenues.   They join the lessees as defendants, and ask judgment against them *in solido*.

There is in the records an exhibit from the official map of the city, showing the extent of batture and location of the L., N. O. and T. R. R., west of square No. 1 of that part of the city of Baton Rouge, known as Leonard town, certified by the parish surveyor.

The track of this railroad traverses the vacant space between square No. 1 and the water's edge, denominated by the plaintiffs as batture, in a somewhat diagonal direction; so that, at the point of its intersection of North Boulevard street, it is one hundred and thirty-four feet from the latter and fifty feet from the former; while, at the point of its intersection with Convention street, it is only one hundred feet from the water's edge and eighty feet from the square.

The vacant space thus traversed by the railroad is on the map denominated Front street.

It is this property that plaintiffs claim to be exempt from public use.

This suit appears to have been brought under the provisions of the Revised Statutes of 1870, sec. 318, and which reads as follows, viz: " Whenever the riparian owner of any property in the incorporated

towns or cities of this State is entitled to the right of accretion, and batture has been formed in front of his land more than is necessary for public use, which the corporation withholds from him, he shall have the right to institute suit against the corporation for so much of the batture as may not be necessary for public use; and, if it be determined by the court, that any portion of it be not necessary for public use, it shall decree that the owner is entitled to the property, and shall compel the corporation to permit him to enjoy the use and the ownership of such portion of it."

In order that plaintiffs be entitled to recover, in our opinion, the following conditions must concur:

1st.   The evidence must disclose that they are the "riparian owners" of the property in dispute.

2d.   That there has formed an accretion or batture in *front* of their land more than is necessary for public use.

3d.   That the defendant city withholds this accretion, or batture, from them.

In answer defendant claims possession, since 1810, of all that portion of ground, above described as being traversed by the railroad track, and that the map, or plan referred to by plaintiffs, shows plainly that the land claimed by them was dedicated to public use by their ancestor, from whom they claim to derive title.

The city also urges that said dedication having been made prior to the 27th of October, 1810, when President Madison ordered Gov. Claiborne to take possession of Western Florida, wherein the town of Baton Rouge was then situated, the city is fully protected in the enjoyment of all the rights of use, and *property* therein, as same existed under the laws of Spain, to which government that territory belonged at the time, and that under said laws the river bank in front of Baton Rouge, and particularly that part of it in front of Leonard town, belonged to the defendant.

The city contends that her right to said vacant space was recognized by France in the treaty of Ildefonzo, in 1800, whereby Spain conveyed the province of Louisiana to that republic; and again in the treaty between France and the United States, in 1803, whereby same was ceded to the latter; and that judgment in plaintiffs' favor would be in violation thereof.

Defendant expressly denies that there is any *increase* in alluvion, in front of that portion of the town divided into lots by Gilbert Leonard, since said division was made; and avers that the works erected by the

Mississippi Valley Railway Company *prevent the inundation* of Front street, and the lots fronting thereon, and theretofore occurring.

The city admits that, in the exercise of her corporate powers, and to provide a revenue, lessen the burden of taxation, and to increase her facilities of trade in the article of fuel, which is one of prime necessity, she permitted a landing for coal in front of said Leonard town, where boats and barges are moored, and that for this privilege she has charged an annual rent.

She pleads in bar of plaintiffs' right of action, the prescription of ten, twenty and thirty years, and prays judgment sustaining same, and decreeing the city entitled to the *ownership*, use and possession of the property in controversy.

The word "batture" has a precise legal signification: *Vide* Bouvier's Law Dictionary, *verbo, batture* : "An elevation of the bed of a river, under the surface of the water; but is sometimes used to signify the same elevation when it has risen above the surface. The term "battures" is applied principally to certain portions of the bed of the Mississippi river, which are left dry when the water is low, and are covered again, either in whole, or in part, by the annual swells." 33 Ann. 548, Hollingsworth vs. Chaffe.

Abbott's Law Dictionary is the same.

In 6 O. S. 216, Morgan vs. Livingstone, the rights of riparian owners to batture formations on their river front, was thoroughly examined by Judge Martin, and from which the foregoing definitions were extracted.

The bank of a river is that space the water covers when the river is highest in any season of the year. The banks are not sold; they pass rather as an accessory of the contiguous land when sold, and the property of the banks belongs to those whose fields are contiguous. They must be the property of the riparian owners, without being included, or mentioned in their grants ; for if they were only when included, there would be no use for the provision of the law.

"If," says the learned judge, "therefore, when the sovereign grants land contiguous to the river, without mentioning the bank, it passes, it must do so as an accessory. If the bank passes as an accessory in the grant of the sovereign, it must also in the deeds of private persons."

But defendant contends that the city of Baton Rouge occupies an exceptional position, and her counsel cite in their brief several paragraphs from the Partidas, to show that under the laws of Spain, prevailing at the date of the treaty of Ildefonso, when the province of

Louisiana was ceded to France, " the alluvion of said deposits on the banks of rivers " *belonged* to the commons of cities and towns that were incorporated. '

In the opinion above quoted, (p. 236), the court said on this question : " Under the Spanish government no town or city seems to have been erected by legal authority ; that of New Orleans was the *only* one that existed.

" It is true that in it the owners of the lots nearest the river have no part of the bank as accessory thereto. These lots are not charged with any of the burdens attending· rural riparious estates ; the levee, roads and streets were made and kept in repair at the joint expense of every lot in the city. The farthest from the water contributing as much thereto as the nearest. No riparian duties are imposed on a lot in New Orleans, either by the law, or any clause in its grant.

" Not so with regard to rural estates·; the law and a clause in the original grant burden those contiguous to the river with the confection and repair of roads, ditches, bridges and levees."

In 18 La. 123, Municipality No. 2 vs. Orleans Cotton Press, this question was exhaustively considered in a very elaborate opinion. The Court said : " Cities may acquire *jure alluvionis*, but it must be as *owner* of the front, or as riparian proprietor ; for the alluvion is but an accessory to the principal estate or land."

Again : " The mere act of incorporation of the city in 1805, changing the name of this property from *rural* to *urban*, neither made the city a front proprietor, so as to acquire *jure alluvionis*, or deprive the front lots of the right to such accretion."

Again : " The public, through the agency of the corporation, has the sole use of the levee and the bank of the river."

In 10 Ann. 55, Kennedy vs. Municipality, the Court said : " The next point made by defendants, namely, that the batture is *locus publicus*, and belongs to the city by destination, is a renewal of the pretensions set forth by the city in the case just quoted, of Municipality No. 2 vs. Orleans Cotton Press, and which were overruled after the fullest argument, and the most mature consideration." 18 La. 237.

This question was thoroughly considered in 10 Peters, 709, New Orleans vs. United States ; 6 Peters, 431, the city of Cincinnati vs. the Lessee of White ; and in 6 Peters, 490, Barclay vs. Howells, Lessee.

In the opinion in the first case the history of Louisiana is traced from the 26th of September, 1712, when the King of France granted a charter of right to Crozat, and whereby the laws, edicts and ordinances of the realm, and the custom of Paris, were extended thereto ; and the

lands, coasts, harbors and islands were granted to him. In that case the principles above quoted were recognized and applied.

We conclude that the claim of *ownership* set up by defendant is not well founded.

## II.

This brings us to the consideration of the pleas of prescription urged in behalf of the city.

In 10 Ann. 54, Kennedy vs. Municipality, the Court said: "As to the claim by prescription, it results very clearly from the authorities above invoked that the possession of the *locus in quo* by the city, was a possession simply for the purpose of administration, not at all inconsistent with the right of ownership in the riparian proprietor, and destined, in its nature, to terminate upon the happening of a certain contingency. Such a possession cannot be pleaded against the riparian proprietor, as the basis of an adverse title in the city. *This suit is very different from a petitory action.*" 11 Ann. 148, Remy vs. Municipality; 11 Ann. 738, Gaiennie vs. Municipality.

The plea must be overruled.

## III.

This brings us to the consideration of the question of dedication to public use of the property in question.

From the map to be found in the record it appears that the space between the lots Nos. 1, 2, 3, 4, 5, in square No. 1, in that part of the city of Baton Rouge designated thereon as Leonard town, and the river is about one hundred and eighty feet in depth. That, in this space, is laid out and in use a street called Front street, of the mien width of fifty-three and one-third feet, and between it and the river the track of the Mississippi Valley Railroad is constructed. The front of Leonard town, from Convention to North Boulevard street, is 320 feet, and the batture is used by Wood, Widney & Co., as a coalyard and coal-chute. The railroad track is on batture. The chute rests on trestles, and is used to load coal on the cars. The locomotive and machinery to raise the coal is on a barge in the river.

The judge, in his opinion, says : "The witnesses agree that if the embankment or breakwater, made by the railroad company, was removed, the whole front of Leonard town square would be under during high water in the river. The whole of the front of the square has been filled up by the railroad company."

In 6 Peters, 502, the Court said of the city of Pittsburg : "From the plan of the town it does not appear that any artificial boundary, as the southern limit of Water street, was laid down. The name of

the street is given, and its northern boundary, but the space to the south of it is left open to the river. All of the streets leading to the south terminate at Water street, and no indication is given on the plat * * that it did not extend to the river. * * * * And it appearing that the commerce of the town required the extension of the street to the river, and there being no statement, or line marked on the plat of the town opposed to it; and, as the public, for thirty years or more, in some parts of the town, had used this street; and that property had been bought and sold in reference to it, in this form; it was held to be sufficient dedication to public use."

In the record we find an ordinance of the city of Baton Rouge, of date May 22, 1847, in which it is declared "that from and after the 1st day of September next the steamboat landing will be extended to the. lower line of Convention street."

We also find another ordinance of date April 25, 1860, which declares "that the space comprised between the lower line of Convention street and the lower line of North Boulevard street, shall be exclu- sively reserved for *all landings not otherwise provided for.*"

After being set apart for public use, and enjoyed as such, and private and individual rights acquired with reference to it, the law considers it in the nature of an *estoppel in pais* which precludes the original owner from denying such dedication. 2 Dillon on Corporations, p. 598.

While a mere survey of land by the owner into lots defining streets, squares, etc., will not, without a sale, amount to a dedication, yet a sale of lots with reference to such plat, when bounded by streets, will amount to an immediate and irrevocable dedication of the latter, bind- ing on both the vendor and vendee. 2 Dillon Corp., sec. 503.

In 10 Ann. 81, Saulet vs. New Orleans, the Court said : " To support a dedication to public use, it must appear that the property has been so used with the assent of the owner, or else it must appear unequivo- cally by some plan or writing, that the owner had made a dedication, to violate which would involve a breach of good faith."

In 24 Ann. 194, Arrowsmith vs. New Orleans, the Court said : " It is manifest from the evidence in the record that plaintiff sold the greater part of the lots in 1835, and his acts of sale refer to the plan, and have been located according to the conditions imposed by the City Council. He has acquiesced in this respect for thirty years with full knowledge of the facts and by adopting the changed location; by the act of selling lots in accordance with it, we think the purpose to dedicate to public use may be fairly inferred."

In 6 Peters, 431, Cincinnati vs. White, the following principles were settled :

1. That it is not essential to a dedication that the legal title should pass.

2. Nor that there should be any grantee of the use to take the fee.

3. Nor that a deed or writing is necessary to a valid dedication.

Upon the foregoing compilation of authority, as applied to the evidence, we have no hesitancy in saying that the dedication of the space in controversy is fully made out.

It is unneccessary for the purposes of this enquiry for us to adjudge plaintiffs' title, because the public has the use irrespective of the question as to where the fee resides. 2 Dillon Corp., p. 524.

## IV.

The question left for decision is whether—conceding for the argument that plaintiffs are "riparian proprietors"—has the defendant city in her possession and under her administration more of the accretion or batture than is necessary for public use.

We are of the opinion that the plaintiffs have not, in this respect, made out a case. The weight of testimony is to the effect "that there is no more batture in front of the square included between Convention street and North Boulevard now than there was many years ago." The level of the bank was raised by the railway company. Its present improved condition is not referable to accretion.

The plaintiffs complain that the city has for several years leased this front for purposes of a coal yard, and have made of it a coaling station ; and that this is not "a public use." Their counsel cites in support of that view 5 Ann. 36; 6 Ann. 450; 12 Ann. 657; but we do not regard this case as falling within the provisions of either.

The defendant has not built, nor permitted to be constructed, upon the space in controversy, any *permanent* structure. The city claims that she only permitted and allowed certain constructions and embankments to be made from the bed or sloping bank of the river, between high and low water, in the interest of the commercial prosperity of the city, and to meet the *actual wants* of the people. It appears that if those artificial embankments had not been made, this property would not have been susceptible of occupancy. It also appears that wharfage dues are now, and have been, collected from steamboats and other crafts that land in front of this space.

This right was well recognized under the laws of France and Spain. 10 Peters, 727, New Orleans vs. United States.

In her answer, the city claims, "that in the exercise of her corporate powers, and to provide a revenue for the city, lessen the burden of taxation, and increase the facilities of trade in the article of fuel—which is of prime necessity—she has permitted a landing for coal in front of Leonardtown square, where boats and barges are moored."

Such rights and privileges as the city claims were well recognized by the civilians, as well as by common law writers, and their allowance is specially sanctioned by our Code. R. C. C. 863.

The judgment of the lower court is therefore affirmed.

## ON REHEARING.

FENNER, J. We granted the rehearing in this case, not because we had discovered any error in our former decision, but because the cast appellant complained that the author of the first opinion had not been a member of the Court at the time when the cause was submitted, and had not heard the oral arguments.

We have, however, attentively considered the arguments and authorities which have been advanced on the new hearing.

We remain fully convinced that the evidence in the case establishes a valid dedication to public use of the *locus* in controversy under the principles established by the following authorities: Carrollton vs. Muny, 19 La. 71; Carrollton vs. Jonas, 7 Ann. 233; Soulet vs. New Orleans, 10 Ann. 81; Arrowsmith vs. New Orleans, 24 Ann. 194; Cincinnati vs. White, 6 Peters, 431; New Orleans vs. U. S., 10 Peters, 662; 2 Dillon Mun. Corp., §§ 499, 500.

2d. Plaintiffs have failed to bring their case within the purview of sec. 318, R. S., because it is not shown that "batture has been formed in front of the land more than is necessary for public use."

The context shows that the statute refers to *batture* formed by *accretion*. In this case, it fully appears that the land in controversy has been reclaimed by artificial works erected under the authority of the city; and it is, moreover, necessary for public purposes, and is used for purposes of a public character, though through the medium of private parties, who act under the city's authority only temporarily granted.

The uses are as a landing, wharf and storing-place for coal for the purpose of facilitating the reception and distribution of fuel to the inhabitants at reasonable prices which are regulated, to a certain extent, in the ordinance.

The public character of such uses is not destroyed by the fact that they are temporarily farmed out to particular individuals. Cities ex-

ercise, without question, the right of designating particular portions of their wharves and landings for the use of certain lines of vessels, or for the reception of certain kinds of commodities, and the power here exercised is of that general character. If the parties benefited are willing to pay for such privileges, plaintiffs have no cause to complain·

3d. The right claimed by plaintiffs to recover these revenues, has no support in the authority quoted from Dillon, who merely says: "the proprietor *  * retains his exclusive right in the soil for every purpose of use or profit, *not inconsistent with the public easement.*"

This has no application to a case like the present, where the use and profit result from a direct exercise of the public easement itself by the public authority in which it is vested.

It is, therefore, ordered that our former decree remain undisturbed.