The opinion of the court was delivered by
Watkins, J.
The defendant is appellant from a sentence and judgment pronounced against him in the recorder’s court, condemning him to pay a fine of twenty-five ($25) dollars, or be imprisoned in the police jail for a term of thirty (30) days, for the violation of city ordinance No. 4797, A. S., prohibiting the obstructing of the streets and public thoroughfares thereof.
The defendant appeared and moved the court to quash and dismiss the prosecution against him on the following grounds, viz. :
1. That said ordinance is unconstitutional and illegal, and deprives him of his property without due process of law, without compensation or indemnity; and violates the Constitution and laws of the United States and of this State — and, more particularly, the fourth, fifth and fourteenth amendments to the United States Constitution, Arts. 1, 2, 6, 155 and 156 of the Constitution of this State, and Art. 497 of the Civil Code.
2. That the recorder’s court is without jurisdiction under Art. 92 of the State Constitution to try this case, which is an attempt by the city, under color of said ordinance, to deprive him of his property.
3. That the defendant did not violate said ordinance, in point of fact, as stated in the affidavit, to which he pleads a general denial.
He then sets out the following defence, viz.: That the space pretended, in said affidavit, to have been obstructed, was and is the private property of the defendant, as more fully appears by the acts of sale, and surveyor’s certificates annexed and made part of his answer. That he and his predecessors have long paid State and *1407 city taxes on said space, which forms part of his premises as described in said deeds and certificates.
This motion to quash was overruled by the recorder for reasons assigned orally, and not appearing of record; and thereupon the trial was proceeded with, a large amount of testimony taken, and judgment was thereon rendered against the defendant.
Ordinance No. 4797, A. S., relates to the obstruction of streets, gutters, banquettes and other public places; and it provides that “it shall be unlawful for any person or persons to encumber or obstruct any of the streets, gutters, public roads, public grounds, public squares, public places or promenades, banquettes or sidewalks of the city, by depositing in or on the same any box, bale, hogshead, barrel, or any goods, wares or merchandise, or any article whatsoever, exeqpt for the necessary time for loading and unloading the same;” then follows the formula of proceeding, and the penalty attaching to violations thereof.
The affidavit made under this ordinance complains that the defendant did, on the 9th of May, 1893, on Natchez alley, corner of Tchoupitoulas street, in the city of New Orleans, violate its provisions “by obstructing the thoroughfare.”
The defendant’s counsel, in oral argument and in brief, urges the following grounds of defence, on which he relies — as arising under the pleas set up in his answer, to-wit:
1. That the city ordinance does not CDnform to the city charter (Sec. 7, Act 20 of 1882), which authorizes the common council “ to open and keep open and free from obstruction all streets, public squares, wharves, landings, lake shore and river and canal banks,” because “ Natchez alley does not come under the above description.”
2. Assuming chat the city has power to pass said ordinance, yet it had no right to undertake to enforce such ordinance by fine, and, in default of payment, by imprisonment — because there is no such delegation of authority in the city charter.
3. That the space that is alleged to have been obstructed was and is private property of the defendant, and that the recorder’s court is without jurisdiction under the Constitution, because the proceeding was virtually an attempt to deprive the defendant of his property without due process of law.
An examination of the city charter discloses that the common council possesses the power, and has imposed upon it the duty, “ to *1408 pass such ordinances and see to their faithful execution as may be necessary and proper,” for the various purposes and objects afterward enumerated; and amongst those enumerated are the following, to-wit: to maintain the cleanliness and health of the city, and to • this end, among other things, “to adopt all such ordinances and regulations as shall be necessary and expedient.”
It confers upon the common council power, and makes it their duty, to provide “that all premises, yards, streets and alleys shall be kept in a cleanly condition;” and also to “ provide for the punishment of any violation of such ordinances or regulations by fine or imprisonment, or both.” This paragraph is immediately followed by another in the same sentence, which declares it to be the duty of the council to “ open and keep open and free from obstruction all streets, public squares, wharves, landings, lake shore, and river and canal banks;” and while the General Assembly did not find occasion to repeat or reiterate the delegation of authority to pass all such ordinances as might be necessary for the enforcement of same by fine or imprisonment, it is clearly and easily inferable from the text and context, when construed together, that such was the legislative purpose and intent.
• The case of State vs. Bright, 38 An. 1, so confidently relied upon by defendant’s counsel, is not applicable, because it involved the question of the power of the city to enforce, by fine and imprisonment, compliance with the requirements of an ordinance relative to the establishment of an uniform grade for all sidewalks within the corporate limits — a question altogether different from the one before us, and controlled by different provisions of the charter.
But the principle of law announced, as controlling the opinion of the court, is strictly correct and equally applicable to the instant case.
“It is a principle,” says the court, “ that a municipal corporation, which is a creation of the law and a State functionary, can exercise only those powers which have been expressly delegated to it, and (those) which are necessarily implied as inherent to its existence, and thus absolutely indispensable for its administration and maintenance in the accomplishment of the functions for which it was put in being and given life.
“It is therefore acknowledged by text writers, supported by abundant authorities, that a municipal corporation has no right to *1409 enforce ordinances which it has the power to pass, by fine and imprisonment or other penalty, unless that right has been unquestionably conferred by the law-giver; for this is inflicting a punishment for the commission or omission of an act declared an offence, a prerogative which, as a rule, appertains to the sovereign alone” — citing Dillon and Desty.
However, it is only necessary to quote the second succeeding paragraph in order to show that the interpretation we have placed upon the provisions of Sec. 7 of the charter is correct. It is as follows, viz.:
“ The words ‘ shall provide for the punishment of any violation of such ordinances or regulations by fine or imprisonment,’ found in section seven (7), refer to ordinances which the common council is authorized to pass and have executed, as may be necessary and proper to preserve the peace and good order of the city, and to maintain its cleanliness and health.”
And inasmuch as the same section of the charter which confers upon the common council power to pass ordinances for the purpose of keeping and maintaining the cleanliness and health of the city likewise confers upon them the power to pass ordinances providing “ that all premises, yards, streets and alleys shall be kept in cleanly condition,” and also confers the power on them to pass ordinances requiring all streets, public squares, wharves, landings, etc., to be kept open and free from obstruction, the power to pass ordinances providing for the punishment of any violation of such regulation by fine and imprisonment is clearly and easily inferable therefrom.
The various powers enumerated are of the same generic character and are germane to each other; it is our conclusion that the common council had the statutory authority to pass the ordinance in question, and same is consequently legal and valid.
On the ground of defendant’s contention that Natchez alley did not fall within the designation of a street in the sense of the city charter a great deal of testimony was taken; and while it satisfies us that it is not, perhaps, in common parlance a “ street,” yet it is evidently a public place or way, on which the business and affairs of the abutting proprietors are done, and for a great many years past have been conducted, and comes within the designation of the statute and the ordinance — notwithstanding the defendant’s deeds, and those of his authors, disclose that his title extends a few feet into the alley-way.
*1410 We think the evidence fairly discloses Natchez alley to be, to all intents and purposes, a locus publicus, that has by the uses to which same has been put during a long series of years become dedicated to public use.
The charter confers upon the common council power and makes it their duty to provide that all premises, yards, streets and alleys shall be kept in a cleanly condition, and that all streets, public squares, etc., shall be kept open and free from obstruction; and the ordinance embraces within its provisions streets, gutters, public roads, public grounds, public squares, public places or promenades, banquettes or sidewalks of the city. Either is sufficiently comprehensive to embrace Natchez alley, a public place, that has been thought of sufficient business importance to be given a name, like other streets of the city have.
This much is clearly admitted in the brief of the defendant’s counsel, in the following paragraph, viz.:
“ Plan and survey 0, by H. W. W. Reynolds, deputy city surveyor, of March 18, 1880, showing defendant’s property, under his title, to be at least 80 feet 7 inches front on Tchoupitoulas street by 119 feet 10 inches in depth, and to include in its measurement 4 feet 11 inches and 6 lines in width by 119 feet 10 inches in depth in Natchez alley.” P. 8.
A like description of the defendant’s property is found in the titles of his authors in 1878 and 1875, and even in 1822, in each of which the side boundary is given as “Natchez.alley,” notwithstanding his premises impinge on the alley to the extent of 4 feet 11 inches and 6 lines on one side.
It is true that Natchez alley at its intersection with Tchoupitoulas street, and where it, in part, bounds the defendant’s lot, is not of sufficient dimensions to admit of the passage of wheeled vehicles of any kind, bpt it is of sufficient width to admit of free passage to pedestrians going in the direction of the Mississippi river, and upon it the properties of various abutting proprietors front. This alley is one of the minor arteries of commerce and trade in the city.
It has been frequently decided that a formal act of dedication to public use is not essential to constitute a locus publicus.
“After being set apart for public use and enjoyed as such, and private and individual rights acquired to it, the law considers it in the nature of an estoppel en pais, which precludes the original owner *1411 from denying such dedication. 2 Dillon Mun. Corp., p. 598.” Heirs of Leonard vs. Baton Rouge, 39 An. 283.
“ To support a dedication to public use, it must appear that the property has been so used with the assent of the owner, or else it must appear unequivocally by some plan, or writing, that the owner had made a dedication, to violate which would involve a breach of good faith.” Saulet vs. New Orleans, 10 An. 81; Arrowsmith vs. New Orleans, 24 An. 194.
It was held by the Supreme Court, in an early case, and after a careful examination of the authorities, that a deed or writing was not essential to a valid dedication. Cincinnati vs. White, 6 Peters, 431. See, also, Carrollton vs. Muny, 19 La. 71; Carrollton vs. Jonas, 7 An. 233; New Orleans vs. United States, 10 Peters, 662, 2 Dillon Muñe. Corp., Sees 499, 500.
On the evidence adduced we are of opinion that the Recorder correctly held with the prosecution.
Neither counsel for the State or defendant contend that, in such case, and for such purpose — that is to say, for the determination of the legality of the fine imposed — the evidence is not examinable on appeal to this court. That question was discussed and decided in State vs. Fourcade, 45 An. —. Vide 13th Southern Reporter, No. 3, page 187; State vs. Callac, 45 An. 27; State vs. Dean, 45 An. —.
These three cases are the most recent expressions of this court on the subject and may be accepted as controlling any utterances and opinions of the court in any previous cases, some of which are collated for the purposes of comparison; though analysis, and comparison of same is not deemed necessary, as the jurisdiction of the court in the present controversy is not mooted or quest oned. City vs. Bayley, 35 An. 545; Tax Collector vs. Conner, 42 An. 787; City vs. Layman, 43 An. 1180; City vs. O’Neil, 43 An. 1182; State vs. Pittsburg and Southern Coal Company, 41 An. 467; Corporation of Minden vs. Sylvestein, 36 An. 915.
In the third and last contention of defendant, to the effect that the recorder’s court is without jurisdiction because the proceeding was, virtually, an attempt to deprive him of his property without due process of law, is altogether without merit, because there is no controversy in the case touching, in any manner, the title to defendant’s property, except the one he has himself urged, and to *1412 which reference has been made. This is essentially a criminal proceeding in character and purport, involving an exercise of the city’s police power, though the location of the defendant’s property adjacent to Natchez alley, is a question in the case; and hence all other rights of the defendant are reserved.
Altogether we are of opinion that the appellant has not made out a case entitling him to relief.
Judgment affirmed.