Shreveport & Red River Valley R. R. Co. vs. St. Louis & Southwestern R. R. Co.

## No. 12,837.

SHREVEPORT AND RED RIVER VALLEY RAILWAY CO. VS. ST. LOUIS & SOUTHWESTERN RAILWAY CO.

### SYLLABUS.

A railroad corporation having secured a franchise and right of way for the purpose of constructing its tracks upon a *locus publicus* of a city, has the right to expropriate from another railroad corporation sufficient clearance space to enable it to pass its trains free of obstructions and hindrances from the latter, if the use thereof be not of such a character as to be indispensable to the movement and operation of its own trains or its other business.

### ON REHEARING.

The use of a team track and delivery space of a railroad company was not shown so esential as that it would result in impairing defendant's franchise and use, in case another railroad is permitted to use three feet for clearance space, which clearance does not interfere with the running of defendant's train, nor to an irremediable extent with the use of defendant's team track and delivery space.

ON APPEAL from the First Judicial District Court for the Parish of Caddo. *Land, J.*

*Leonard & Randolph* for Plaintiff and Appellee.

*T. Alexander* and *S. H. West* for Defendant and Appellant.

Argued and submitted June 3, 1898.
Opinion handed down June 22, 1898.
Rehearing granted (Reasons assigned), January 9, 1899.
Argued and submitted on Rehearing January 25, 1899.
Opinion on Rehearing handed down March 7, 1899.

On the Application for Rehearing by WATKINS, J.

On Rehearing by BREAUX, J.

The opinion of the court was delivered by
WATKINS, J. This is an expropriation proceeding, the object of

which is to procure the condemnation and adjudication to the plaintiff of a certain strip of ground which is described in its petition upon the payment of such damages as may be awarded to the defendant in compensation therefor by a jury of freeholders; and it is coupled with an injunction prohibiting the defendant from laying any track or other obstruction thereon, or in any manner incumbering same, *pendente lite.*

On the trial, there was a verdict of the jury in favor of the plaintiff, expropriating a strip of ground three feet in width, off of the Southwest side of defendant's reservation on the batture on the river front of the city of Shreveport, and in length extending from a point opposite block sixty-one (61) in said city, to a point opposite block fifty-nine (59) and aggregating about nineteen hundred and ninety-five square yards, as shown by the map, which is annexed to the petition.

And the verdict of the jury further declared, that said strip of ground is awarded to the plaintiff company upon its paying to the defendant the sum of seven hundred and fifty dollars therefor, and twenty-two hundred and fifty dollars in full for damages sustained.

It further awarded the maintenance and perpetuation of plaintiff's injunction, in so far as, and to the extent of said expropriation, and that same be otherwise dissolved.

In pursuance of that verdict, the judge *a quo* pronounced judgment in plaintiff's favor; and thereupon the plaintiff deposited with the clerk of the District Court the sum of three thousand dollars, the amount of said judgment and award, and the defendant prosecutes an appeal therefrom.

In this court the plaintiff appeared by counsel and filed an answer to the appeal, and requested an amendment of the judgment appealed from by rejecting and disallowing the sum of $2250.00, which the jury awarded as damages.

The averment of the plaintiff's petition is, that it is proceeding with the work of constructing a railroad from the city of Shreveport to the town of Coushatta, Louisiana, and is under an obligation to the city of Shreveport to establish its depots in, and run its daily trains into that city; and that in consideration thereof, said city has granted it "a right of way to lay its track on Commerce street, in said city, as is shown by plat and ordinance thereto annexed."

That in laying and establishing its said "track under the grant of said city on said Commerce street, between Texas and Cotton streets,

in the said city, the space granted to it between two existing tracks of the defendant between Cotton and Texas streets, is not sufficiently wide to accommodate its said railroad tracks and (its) business on Commerce street, between the said Cotton and Texas streets; and that an additional strip of ground six feet wide, between the Red River and (its) right of way, and extending along Commerce street, (between certain points indicated on the map) is necessary and indispensable to (it) in the laying of its tracks and the construction of its road, and in reaching its terminals in said city as per its contract with said city."

That said strip of ground is claimed by the defendant exclusively, which refuses to allow it to use or occupy any portion of said necessary strip of ground, notwithstanding it has tendered to the defendant the value thereof and amicably demanded same; and notwithstanding the same is not required for the defendant's use, it having already two tracks laid on Commerce street and the aforesaid batture, and has a large amount of ground adjacent to and parallel with the aforesaid strip of ground, which is not requisite for its use.

That in consequence thereof, the expropriation and use of the aforesaid six feet strip will not interfere with the operation and use of either of the defendant's two aforesaid tracks.

The petition further represents, that there are at present no erections or constructions of any sort upon said strip of ground, but that its fear and apprehension are, that defendant contemplates, and will, if not restrained by injunction, lay a track thereon, or otherwise obstruct the same *pendente lite*.

Without answering to the merits, the defendant filed an exception to the effect, that the strip of land sought to be expropriated is part of its tracks, grounds, and terminals, and essentially necessary to the proper operation of the same in handling its freight traffic in the city of Shreveport, that said strip of ground lies between its tracks, and constitutes a part of the space arranged, filled-in, graveled and built by it at great expense, for the accommodation of its business for the purposes of freight delivery.

That same is now in actual use for the purposes aforesaid; was so in actual use at the date of the institution of this suit; and had been so in use for more than one year prior thereto.

"That the bisecting of said space by the laying of a track and the operation of the same, as sought for by the plaintiff in this proceeding,

FIFTY-FIRST ANNUAL REPORTS, 1899.        817

Shreveport & Red River Valley R. R. Co. vs. St. Louis & Southwestern R. R. Co.

would utterly destroy and render valueless for the purposes and uses intended, and for which it was intended by the defendant, the entire space between the tracks.

That there exists no necessity for the infringement of the rights of the defendant and the destruction of its property by laying thereupon of the track as proposed and contemplated by the plaintiff in this proceeding; but that there is ample space outside of defendant's track both on Commerce street and along the batture opposite its ground.

That there exists no legislative authority, or other legal power under the laws of this State, to expropriate the property of the defendant which is in actual use by it, and necessary for its efficient, proper and successful operation of its railway and transportation business."

Fully reserving the benefit of the foregoing exceptions, the defendant filed an answer *in extenso*, in which the following additional grounds of defence are set out, viz.:

That it is now and has for several years been engaged in operating a line of railway in the State of Louisiana, and in the city of Shreveport, having succeeded to the rights and franchises of the Shreveport and Arkansas Railway Company, and the St. Louis, Arkansas and Texas Railway Company. That it is the owner in possession of and engaged in operating its said road over certain tracks in the city of Shreveport, under grants by proper ordinances from said city.

That its said tracks and franchises are very valuable and necessary to the proper operation of said road in getting access to and from its freight depot; and, also, in getting access to cotton compresses, warehouses, mills, founderies and other factories and industries.

And that the free and unlimited use of its said tracks and terminal facilities, is an absolute essential to the successful and proper operation of its said road.

"That its said tracks and terminals embrace, among others, a right of way on and along Commerce street, in the city of Shreveport, between Cotton and Texas streets. That, in addition to its right of way at this point, *it is the owner and in possession of* a tract or strip of ground along the river front on Commerce street, one hundred feet in width, granted to it by virtue of an ordinance of the said city of Shreveport, which was part of the consideration in inducing the respondent company or its predecessors * * * to build said railroad into the city of Shreveport. That it has laid upon its said right of way and strip of ground, two tracks, one of which is upon its right

52

818 SUPREME COURT OF LOUISIANA.

Shreveport & Red River Valley R. R. Co. vs. St. Louis & Southwestern R. R. Co.

of way on Commerce street proper, and the other upon the one hundred feet strip adjoining thereto, on the batture which was granted it, as aforesaid.

"That the said inner track is used as its main track in getting to and from its freight depot, warehouses, compressors, mills, etc., and the other or the outside track, is used as a switch or delivery track for the purpose of delivering freight to various shippers and consignees in the city of Shreveport.

"That at the time the said main or inside track was laid, and for years subsequent thereto, the said main track was on the edge or brink of the river; and that within the last twelve months it has, at great expense and at a cost of more than ten thousand dollars, filled-in its said ground along the river front and built its outside track thereon.

That it was so built and constructed with the consent of the city, and in accordance with rights theretofore granted to it by the city council; and that the use of said tracks, as they now exist at this point, as well as of the intervening space, is essential to the proper and efficient operation of said railroad."

It further avers, that the strip of ground sought to be expropriated, is a part of the tracks, grounds and terminals which is necessary to the proper operation of same "and the handling of its freight traffic in the city of Shreveport.

That the strip of ground lies between the tracks of the defendant and constitutes a part of the space which it graded and filled in for the accommodation of its own business, and for the purposes of freight delivery to its customers."

It specially denies the plaintiff's legal right to expropriate said property; and, also, denies the legal right of the city of Shreveport to grant to plaintiff any right of way over said strip of ground.

It then avers, that the direct and immediate effect of the expropriation of said strip of ground, and the laying of a railroad track thereon would be to destroy said freight delivery, and render same useless for the purposes same was intended to subserve, and to cause irreparable injury to its property, rights and franchises.

In the alternative, it estimates the loss and damages it will sustain, in case said strip of ground is expropriated, at twenty-five thousand dollars; and it demands a verdict for that sum, and the further amount of two thousand dollars, as the actual value of the strip of ground.

Shreveport & Red River Valley R. R. Co. vs. St. Louis & Southwestern R. R. Co.

The petition, exception and answer are considered especially valuable, as containing not only a statement of the facts, and particulars of the physical situation of the *res* in question, but more particularly for their judicial admissions, whereby the scope of the evidence and judicial inquiry into them have been greatly limited.

There is no question of the fact, that the city of Shreveport, by appropriate city ordinance, did grant to the plaintiff a right of way along and parallel to Commerce street, from Cotton street, near the terminus of the railroad bridge across Red River, to Texas street and beyond, in the direction of Cross bayou, within city limits; and this grant was made and intended to enable plaintiff's road, which was a new one, to reach and render accessible certain terminal facilities, freight depot, workshops, etc.

That this grant proposed and did permit the plaintiff to build and operate one single track parallel with one of the defendant's tracks nearest to Commerce street, and between it and its outer track, which is immediately upon the brink of the river's bank; and that the small strip of ground which the plaintiff proposes to expropriate, is a portion of the intervening space of ground which lies between the defendant's two tracks and is or will be longitudinally bisected by the plaintiff's track.

The plaintiff's contention is, that the defendant is *without any fee simple title* to the aforesaid space, and has no other right thereto than an use or erasement, same being riparian property, situated upon the bank, or shore of a navigable watercourse; while that of the defendant is, that it has an *absolute right of ownership in said strip of land.*

It is worthy of note, that notwithstanding the plaintiff demanded the expropriation of a space of *six* feet, the jury only awarded *three* feet; and that the plaintiff not only failed to appeal from the judgment and award, but in its answer to the defendant's appeal requested no increase in the quantity of space awarded by the jury.

The record shows that the plaintiff immediately paid into the hands of the clerk of the lower court the full sum of $3000.00, according to the award; and that since the rendition of the judgment it has built and thoroughly completed its track upon the space of ground granted to it, and is operating same with its trains.

The city of Shreveport has not been made a party to this suit, and hence there has been made herein no direct assault upon the city ordinance, which granted plaintiff its franchise; and therefore, we are

bound to accept its existence as a fact, and one that is unquestionable in so far as the parties to this litigation are concerned.

And this necessitates the further statement, that in point of fact, this suit does not involve an actual expropriation of either the *title or use* of the strip of ground itself, but, in strictness of speaking, only what is termed in railroad parlance, a "clearance," or the room or space that is necessary for the movement and operation of the plaintiff's coaches and trains of box cars in passing to and fro over its track, which is adjacent thereto.

It was three feet of space which the jury awarded, and for which the plaintiff was condemned to pay, and has paid, the sum of three thousand dollars, notwithstanding the verdict and judgment used the phrase expropriating "a strip of ground three feet in width off the west side of defendant's reservation on the batture, etc."

As more precisely indicating the *locus in quo,* we have annexed a small sketch, which we have extracted from the plaintiff's supplemental brief, viz.:

Curb line Commerce Street or Levee.

West boundary of reservation 120 ft. from curb.
Outside track Cotton Belt, 141.4 ft. from curb.

On the 11th of May, 1888, the common council of the city of Shreveport adopted an ordinance granting a right of way and privileges on certain streets in which it is declared, "that the right of way with the privileges of laying one or more tracks thereon* * * * * * * be and the same is hereby granted to the Shreveport and Arkansas Railway Company, its successors and assigns * * * * * * * on Commerce Street, from the depot grounds of said company to Cross Bayou. The said railroad company being hereby granted the·

right *to occupy and use* a strip of ground one hundred feet (100) in width along the river front, on Commerce street, between Cotton and Travis streets.   Provided, that said railway company shall not lay its tracks, or in any manner use or occupy any portion of the levee, or Commerce street, between Cotton and Texas streets, *within one hund-red and twenty* (120) *feet of the banquette or sidewalk of said street, etc."*

It further provided, that said railway might "lay and maintain its tracks for and during one year from that date, *on the space between Commerce street,* (between Cotton and Texas streets), *with-in one hundred* (100) *feet of the sidewalk;"* but it was further ex-pressly stipulated therein, that the railway company was obliged to remove the same at the expiration of the year specified.

It was under and in pursuance of that ordinance that the predeces-sor and asignor of the defendant got into position as a railway com-pany, in the city of Shreveport, and built and now maintains and operates its railroad, together with its rights and franchises therein; and to that ordinance we must look, in order to ascertain the full measure of its rights to the *locus in quo.*

The proof shows, and the fact is, that the said railroad company subsequently built its track at a distance of one hundred and five (105) feet from the "curb-line of Commerce street," and is indicated on the sketch as "Main Cotton Belt Track"—a name by which the de-fendant's road is popularly known.

That track was at first only intended to have been a temporary one; but by a subsequent agreement made between the company and the city, for a satisfactory consideration, same was made a permanent structure and has since that time been used and operated as its main track.

The distances marked on the sketch indicate the centres of the dif-ferent tracks.

Subtracting the one hundred and five (105) feet from the curb-line of Commerce street to the defendant's main line, there will remain, necessarily, fifteen of the one hundred and twenty (120) feet of *the original reservation of the city.*

The record shows, that at the time this track was first built, it was immediately on the brink of the river bank, and under authority from the city council and at an expense of over ten thousand dollars, the defendant graded and filled in the space outside its track, up to and

within the 120 feet limit and thereon erected another track, which is designated on the sketch as the "outside track Cotton Belt, 141-4 feet from curb."

Between these two tracks of the defendant, the city council granted the plaintiff upon its reservation its right of way, and its track as placed thereon, is indicated on the sketch by the words "Shreveport R. R. Track"—the centre of same being one hundred and seventeen feet distant from the curb-line on Commerce street, and only *three feet from the* west or outside boundary of the city's reservation of one hundred and twenty (120) feet.

In the ordinance of the city council herein referred to as having granted to the defendant and its predecessors certain batture and riparian privileges, there is an express stipulation to the effect, "that the city reserves the right to alter, amend, restrict, or enlarge the conditions, requirements and burdens herein imposed on said grantees as to the use of said track or tracks, etc.," and it was subject to those reservations that the defendant's predecessors accepted the grant, use and right to occupy said batture with their railroad tracks, etc.

From the foregoing it appears, that in its original grant to the defendant's predecessors in 1888, the city gave them permission to construct and maintain a railroad track "on Commerce street, from the depot grounds of said company to Cross Bayou, the said railroad company being hereby granted the right to *occupy and use a strip of ground* one hundred feet in width along the levee front, etc."

But the granting ordinance specially provided, "that said railway company shall not lay its tracks or in any manner use or occupy *any portion of the levee or Commerce street within one hundred and twenty feet of the banquette,* or sidewalk of said streets."

The effect of this ordinance was to absolutely exclude the defendant's predecessors from the *occupancy and* use of this one hundred and twenty foot reservation, and to grant it "the right to use and occupy a strip of ground one hundred feet in width" *outside* of the limit of that reservation.

Hence the city council had a perfectly unquestioned and unquestionable right to grant to plaintiff a right for its railroad track over its reservation as it was *twelve* feet distant from the main Cotton Belt track on one side and *three* feet from the outside limit of the reservation on the other side.

The city council had a right equally as undeniable to grant the

plaintiff a right of way over the reservation as it had to grant a similar right of way over same to the defendant's predecessors, and more recently a similar right of way over same to the Kansas City Railway Company.

But, inasmuch as the centre of plaintiff's right of way is only three feet from the outer limit of the reservation, six feet additional was deemed necessary, and three feet additional was awarded by the jury to the plaintiff; not for the purpose of enabling it to build its track thereon, but to give to it ample clearance in operating its trains, in the event the defendant or other company should parallel its track—there being no track or other obstruction on said three feet of space at the date this suit was filed.

In order to reinforce this statement, we have made the following extract from the brief of the plaintiff's counsel, viz.:

"Your Honors must know that the track of the plaintiff company at this disputed point, is already laid and in possession of plaintiff. Now, then, the present situation is as follows: Defendants or Cotton Belt main track, has its center 105 feet from the curb of Commerce street; the Shreveport and Red River line has its track just next to it, with its *center* 117 feet from the curb; the outer rail of the plaintiff's line is two and one-half feet from the center or 119.6 from the curb. Now, the 'reservation' of the Cotton Belt only begins at 120 feet from the curb. Thus the plaintiff's rail lacks 6 inches of touching defendant's 'reservation,' but in running a car or train over our track the car or train laps over, or trenches on the so-called 'reservation' about a foot, and the other two feet is needed for 'clearance.' In order to save dispute between the plaintiff and the Cotton Belt as to such use while our trains were passing, we asked the court and jury to state how much we should pay the Cotton Belt, considering the fact that the Cotton Belt had spent money in improving this particular strip and therefore had an equitable claim for reimbursement. They fixed it, with great liberality, at $3000.00. For be it remembered, we do not seek and never intend to use the three feet in question, except in the way explained above, and are willing for your Honors to enter any modification of the decree below, as may seem fit, to meet the peculiar situation."

On this presentation of the facts of the case, the question for decision is, whether the jury properly awarded to the plaintiff the three feet of clearance space for the passage of its trains; same being

824                SUPREME COURT OF LOUISIANA.

Shreveport & Red River Valley R. R. Co. vs. St. Louis & Southwestern R. R. Co.

rendered necessary from the fact that only three feet of space was allotted to it, between the center of its right of way and the defendant's reservation—an insufficiency of room for the *operation* of *its trains,* though there was plenty of space for the *construction* of its *track* thereon.

Indeed, there remained six inches of space outside of the outer rail of its track, which was not covered by it; but, as stated by counsel, the coaches and box cars would, in transit, lap over, or extend beyond the track, so that three additional feet of space were necessary for their operation.

In the first place, we think it sufficiently appears from the terms of the original grant, that the defendant's predecessors did not acquire thereby any fee in the strip of ground one hundred feet in width, in front of the reservation of the city. It is, also, apparent that the city ordinance, in terms, excluded them from any use or enjoyment of the city's one hundred and twenty feet reservation.

All of this property was and is batture, and is so mentioned and designated throughout these dealings and transactions.

There is no limit fixed in the ordinance for the duration of the grant, but it, in terms, declares its revocability at the pleasure of the council.

From the foregoing premise, it is easily deducible, that in so far as the plaintiff's franchise from the city to establish its track impinges upon the defendant's grant, the latter ordinance was an implied repeal of the former one. That this was the evident purpose and intention of the city council in granting to the plaintiff a right of way for its track within three feet of the defendant's reserve, there can be no doubt; for it is neither reasonable nor just to suppose, that the council did not believe that the right of clearance would pass to the plaintiff as an incident of the franchise conferred.

We are of opinion that the principles of law announced in Construction and Improvement Co. vs. Railroad Company, 49th Ann. 527, are strictly applicable to the defendant's contention that it acquired the ownership of a portion of the batture.

The defendant's counsel does not contend that the plaintiff is without the legal right to expropriate at all the space in question, for that principle was decided in Railway Co. vs. Railroad Co., 49 An. 29.

All property is held subject to the right of eminent domain—the principal condition on which the right depends being the public neces-

sity for the expropriation demanded. R. C. C. 3637; R. S. 1486; Const. 1879, Art. 156; Cooley's Con. Lim., p. 523 *et seq.* 2 Kent, p. 333.

No question is made of the plaintiff's use of the space being a public purpose; nor that its use is an absolute necessity for the operation of its road.

Those propositions being conceded, there can be no answer to the plaintiff's demand other than that the space proposed for expropriation is in the actual use of the defendant for the purposes of its traffic and business; and that same is indispensable thereto.

In Railroad Co. vs. Railroad Co., cited *supra,* this court said:

"The question then is whether the land, the subject of this controversy, is in public use. If not, it is subject to be taken for such use the same as that of any individual. If a corporation acquires more land than it requires for its uses, the land not needed is impressed with no immunity from the exercise of that power to which all submit."

What is the situation of this reservation of the defendant, and to what public use is it subjected which interposes a legal barrier to plaintiff's right of expropriation?

The proof shows and the fact is, that the defendant's track, which is nearest the river, is only a switch track, and is laid in the form of a curve; and at its greatest diameter, is twenty-five feet from the track of the plaintiff.

The space within is open and altogether free from erections or constructions of any kind; and it was the alleged purpose of the plaintiff to keep it entirely free therefrom by means of its injunction *pendente lite.*

The defendant principally employs this space for the purposes of freight deliveries from its freight trains, where goods are deposited and temporarily remain until they can be hauled to the warehouses of its customers on Commerce street; and the principal inconvenience which the defendant will suffer by this attempted expropriation is, to our thinking, more seeming than real, in view of the fact that no portion of its reservation is actually taken, and only a "clearance" space of three feet has been awarded.

Before the plaintiff acquired a franchise upon the reservation of the city, the defendant had uninterrupted communication between its

826     SUPREME COURT OF LOUISIANA.

Shreveport & Red River Valley R. R. Co. vs. St. Louis & Southwestern R. R. Co.

two tracks; and we think it reasonably inferable from this record that this franchise is the serious grievance in the case.

It is perfectly obvious that the city of Shreveport has granted to the plaintiff a franchise on which it has already built its track and is now operating its trains thereon. It is equally obvious, that it cannot continue to so operate its trains without it is awarded the clearance of three feet, which is absolutely necessary thereto, and the defendant is enjoined from interfering therewith.

A jury of freholders chosen from the vicinity of the *locus in quo* arrived at the conclusion that three feet of clearance space was essential to the operation of the plaintiff's road, awarded the expropriation thereof and assessed the damages therefor at $3000.00, and the district judge of the vicinage declined to grant a new trial.

Our examination of the record and a study of the law and evidence bearing thereon, have satisfied us that justice has been done.

Judgment affirmed.

MR. JUSTICE BLANCHARD takes no part in this decision, having been of counsel for defendant.

## ON APPLICATION FOR REHEARING.

WATKINS, J. The chief ground of complaint which is urged against our opinion is with regard to certain extracts it made from the city ordinance which granted the original franchise to the defendant's predecessor, as will appear from the defendant's application, viz.:

"The statement of the court in its opinion in this case, that defendant company's grant of right-of-way and franchise from the city of Shreveport, is held subject to an expressed condition in the grant itself, which makes it revocable at the pleasure of the council, based as it is, upon error of fact, is calculated to work serious injury to the defendant. It affects not only the present suit, but may be used against it in the future to jeopardize the rights of the company to its entire tracks and terminal system in the city of Shreveport, etc."

The statement of the opinion referred to is given as follows, viz.:

"In the ordinance of the city council herein referred to as having granted to defendant, and its predecessors, certain batture or riparian privileges, there is an express stipulation to the effect, 'that the city reserves the right to alter, amend, restrict, or enlarge the conditions, requirements and burdens herein imposed on said grantees as to the

*use* of said track, etc., and it was subject to these reservations that the defendant's predecessors accepted the grant to *use,* and *right to occupy* said batture with their railroad tracks, etc."

Again, the opinion states, "there is no limit fixed in the ordinance for the duration of the grant, but it, in terms, declares its revocability at the pleasure of the council."

The present contention of defendant's counsel is, that notwithstand-ing the original draft of the ordinance did embody the foregoing pro-vision, a subsequent ordinance was immediately thereafter adopted, which explained and modified the provisions of the original grant. To show the application of this ordinance and of its amendment, the following statement of the contentions of the parties quoted from our opinion will suffice, viz.:

"The plaintiff's contention is, that the defendant is without any fee simple title to the aforesaid space, and has no other right thereto than an *use* or *easement,* same being riparian property, situated on the bank, or shore of a navigable watercourse; while that of the defendant is, that it has an *absolute right of ownership* in said strip of land."

The opinion makes an extract from the city ordinance making the grant to defendant's predecessor, which conferred only "the right to *occupy and use* a strip of ground one hundred feet in width, along the river front"—same being one hundred and twenty feet distant from Commerce street.

It further states, that "it was under and in pursuance of that ordin-ance, that the predecessor and assignor of the defendant got into posi-tion as a railway company in the city of Shreveport, and built and now maintains, and operates its railroad * * * and to that ordin-ance we must look in order to ascertain the full measure of its rights to the *locus in quo.*"

It is to this state of the case, that the quotation from the ordinance which counsel object to, was applied.

And, predicated upon that quotation, our opinion says:

"Hence the city council had a perfectly unquestioned and unques-tionable right to grant to plaintiff a right of way for its railroad track over its reservation, as it was twelve feet distant from the main Cotton Belt track on one side, and *three feet from the outside limit of the reservation (of the defendant) on the other side.*"

Again:

"On this presentation of the facts of the case, the question for

decision is, whether the jury properly awarded to the plaintiff *three feet* of clearance space for the passage of its trains; same being rendered necessary from the fact that only three feet of space was allotted to it, between the centre of its right of way and the *defendant's* reservation—an insufficiency of room for the *operation* of its trains, though there was plenty of space for the *construction of its track thereon.*

"*Indeed, there remained six inches of space outside of the outer rail of its track which was not covered by it;* but, as stated by counsel, the coaches and box cars would, in transit, lap over, or extend beyond the track so that *three additional feet of space were necessary for their operation.*

"In the first place we think it sufficiently appears from the original grant, that the defendant's predecessors *did not acquire any fee in the strip of ground one hundred feet in width in front of the reservation of the city.* It is, also, apparent that the city ordinance, in terms, excluded them from any use or enjoyment of the city's one hundred and twenty feet reservation. All of this property was, and is, batture, and is so mentioned throughout these dealings and transactions."

Then follows the paragraph to which counsel made objection, viz.:

"There is no limit fixed in the ordinance for the duration of the grant, but it, in terms, declares its revocability at the pleasure of the council.

"From the foregoing premise it is easily deducible that, in so far as the plaintiff's franchise from the city to establish tracks, impinges upon the defendant's grant, the latter ordinance was an implied repeal of the former one."

It is this statement of the opinion, and conclusion of the court, which defendant's counsel regard as an assault upon the defendant's franchise, and the correctness of which they deny.

Taken in connection with the quotations that preceded it, it is evident that the objectionable paragraph does not affect the opinion, though it might, in the future, affect the plaintiff's franchise.

The entire reservation of the defendant of one hundred feet in width is alluvion, and, at the date of the city ordinance which granted it to the predecessors of the defendant, it was a portion of the bank of Red River, a navigable watercourse.

Some years after the defendant's acquisition of it, same was raised, or filled in by the defendant, and thereupon its ouside track was built. The inside or western limit of this reservation was one hundred and

twenty feet distant from the outside curb of Commerce street, which runs parallel with the river.

It is this strip of three feet of the defendant's reservation, which adjoins the city's reservation, that is in controversy.

The city granted to the plaintiff a right of way upon *its* reservation of one hundred and twenty feet, and within *three feet* of the defendant's reservation. There being upon this right of way an insufficiency of space for the plaintiff to operate its cars, it seeks to expropriate the additional space required. Its petition demanded six feet in width, and the jury allowed only three.

Evidently recognizing the fact that the strip of ground upon which it granted defendant's predecessors a franchise was a portion of the river bank, the city did not donate the *soil* or *land* in fee simple, but conferred upon it only "the right to *occupy and use a strip of ground* one hundred feet in width along the river front."

It was, evidently, upon this theory that plaintiff sought an expropriation thereof; and it was, confessedly, upon the theory that it had filled in and raised the height of the river bank that the defendant demanded and was allowed a large sum in damages.

In view of this state of the case, it was quite an unimportant factor in the decision of the same whether the original grant was revocable or irrevocable; or whether or not the city ordinance which granted a franchise to the plaintiff operated as an implied repeal of the prior ordinance which granted a franchise to the defendant's predecessors.

For if same was an irrevocable grant to the defendant's predecessors, and it has been of the *fee* instead of the *use*, it was in the sense of the opinion, and, in our conception, liable to expropriation by the plaintiff as a *locus publicus*.

The statement in the opinion with regard to the revocability of the defendant's grant, and it having been impliedly recalled by the grant in favor of the plaintiff subsequently, was merely argumentative, and only intended to more clearly demonstrate the untenability of defendant's contention.

In this view let us consider the amended and supplemental ordinance to which our attention is now attracted, and its scope and purpose, in connection with the defendant's original grant.

The latter is of the following purport, viz.:

"Section 1. Be it enacted by the City Council of the City of

Shreveport * * * that the right of way, with the privilege of laying one or more tracks thereon, * * * be and the same are granted to the Shreveport and Arkansas Railroad Company, its successors and assigns. * * * The said railway company being hereby granted *the right to occupy and use a strip of ground one hundred feet in width along the river front,* etc.

*    *    *    *    *    *    *    *

"Section 6. Be it further ordained, *etc.,* that the city reserves the right to alter, amend, restrict, or enlarge, the conditions, etc., etc."

This ordinance is dated and signed as a completed ordinance. Transcript, pp. 33 to 36. It was offered and filed in evidence on behalf of the plaintiff. In a different part of the transcript the same ordinance again appears as part of the defendant's evidence. Transcript, pp. 40 to 43.

Upon this latter page there is what appears to be an amendment to the original ordinance. The original ordinance was adopted on December 30, 1887, and the amendment was adopted on the 11th of May, 1888; but our attention was not particularly attracted to this amendment until this application was filed.

The amendment, amongst other things, provides "that section six be and the same is hereby amended *by striking out the first portion of said section,* etc;" that is to say, that portion which relates to the reservation of the city, "to alter, amend," etc.

The gist of this amendment is not readily apparent, and upon casual observation would not be seen; but giving to it its full effect, it does not impair, in any sense, the force or logical consequences of our opinion—as has been sufficiently explained.

But, as defendant's counsel have explained, the error of statement, though inadvertently made, might, in the future, most seriously affect and impair the defendant's franchise, we will make the proper correction so as to give full force and effect to the amended ordinance; but in so doing we will not disturb our conclusions in other respects, nor the force and effect of our decree.

## ON REHEARING.

BREAUX, J. Defendant insists that the ground plaintiff seeks to expropriate is a part of its (defendant's) tracks and terminals, and

indispensable in its operation, and to the handling of its freight traffic in the City of Shreveport. That the space lies between the tracks of its company, and is part of a track filled in and gravelled by it at great expense for the accommodation of the business of the road, and delivery of its freight; that the space is in its actual use; that there is no necessity for the expropriation.

Defendant, in the application, also complains of a passage in our opinion in regard to a right expressly reserved by the City of Shreveport "to alter, amend, restrict, or enlarge, the grant," made by it, the city, to the defendant; again, to the statement in the opinion: "there is no limit fixed in the ordinance for the duration of the grant, but it, in terms, declares its revocability at the pleasure of the council."

The original ordinance of the City Council, as first adopted, was introduced without amendment which forms part of it, and which struck out entirely the clause authorizing the council to alter and amend the grant at its pleasure.

It is a fact, as contended by defendants, that the ordinance, with the amendment, shows that the City Council made the grant without any reservation whatever, and that without reservation it was accepted by the defendant company.

It also appears that the City of Shreveport has never repealed, or in any way restricted the Cotton Belt Grant, and that the ordinance under which the plaintiff company held contains a statement that the grant to it was not intended to effect the Cotton Belt Grant.

The space on which the right of way granted by the city to plaintiff to lay its track on Commerce street was not sufficiently wide to accommodate the track, therefore the need of additional space sued for under the laws authorizing expropriation. The trouble all arose in the matter of the expropriation, with which the city of Shreveport has naught to do.

We do not find it possible to agree further with the position taken by defendant in this application for a rehearing.

As to the first ground stated, that the space of three feet which plaintiff seeks to expropriate is indispensible to the running operation of defendant's road, we do not take it that plaintiff has the right of the use of way in such a manner as to wantonly cause loss or damage to defendant.

These companies will have to manage to run over the short space,

and manage their freight there with as little inconvenience as possible to one another. We take it that in handling freight from one road to the other, there should be but little, if any, impediment.

The defendant has argued that a right of way should not be needlessly interfered with by another right of way. By exercising some of the regard good neighbors usually manifest toward one another, these railroads, we believe, can manage to get along very well, and not inflict injury on each other's interest. Railroads, as with all other interests, are subject to regulations.

It is true, as contended by defendant, that these three feet allowed were filled in and graveled by it at considerable expense.

We thought, and still think, as did the jury in this case, that three thousand dollars was compensation enough for this work, provided the use was exercised with due regard to the rights of the defendant's road.

With reference to the delivery of freight, and the communication between the two roads in the matter of freight, we do not take it that there should be any interference further than must unavoidably arise from passing trains of plaintiff company.

We do not think there is any necessity to discuss the question growing out of the right of the batture, further than to state that in our view of the case, it was in charge of the municipality.

While we have no reason to change the rules of property under which it was decided, in a number of jurisdictions, that property in use by a railroad company can not be expropriated by another railroad company without legislative direction, we can not be unmindful of the fact that in a number of cases it has been held that even part of the yard of defendant's railway may be taken under general grant of the power of eminent domain. Elliott on Railroads, Sec. 1121, citing a number of decisions.

We are informed that the right of way was essential to the construction of plaintiff's railroad, and plaintiff urges that, having the amount assessed, it is reasonable and just to let plaintiff have the use for its passing trains.

Plaintiff avers that its rail lacks six inches of touching on defendant's "reservation;" that in running plaintiff's car or train over its (plaintiff's) track, the body of the car or train extends over and shadows the reservation about a foot, and the other two feet are claimed by plaintiff as indispensable for "clearance." The three feet

expropriated are never to be used save to the extent just stated, and that, as we take it, for the purpose of passing trains only, and none other. The foregoing, we think, is sustained by the testimony.

The purpose involved, in the principle that one railroad company shall not expropriate the property of another, save for crossings and similar objects, is to prevent one railroad from absorbing, destroying, or injuring another. In the present case, we have not discovered that the mere passing (over the short distance expropriated) of plaintiff's road will have that effect. As we take it the appointed work of the defendant road can be carried on at this place without damaging interruption.

In the light of the evidence before us, we think it proper to sustain our original opinion.

We have not discovered, after a painstaking review of the testimony, that the decree would, to any degree, with the modification here made, impair defendant's franchise.

It is therefore ordered, adjudged and decreed, that plaintiff's rail shall not be laid nearer than six inches to the defendant's reservation, and that in running over the track the body of plaintiff's cars, or trains, shall not top over or trench on defendant's "reservation" more than about one foot, and that the remaining space of two feet shall be plaintiff's clearance for its cars or trains, and that this right shall be used only for passing and crossing trains.

With this modification, we, for reasons assigned, re-adopt our original opinion and decree as the decree of the court; that is, as in our original decree, the judgment of the lower court is affirmed.

Rehearing refused.

Mr. Justice Blanchard takes no part in the decision of this case.