BREAUX, C. J.
The claim urged by the city of Shreveport to lay off and open a public street or thoroughfare across a 100-foot strip now in' the possession and use of the defendant company gives rise to the question at issue.
The undisputed facts are that the defendant company is the owner by purchase of the property and franchise of the Shreveport & Arkansas Railway Company, that the latter road constructed its road from the Arkansas line to Shreveport and began running operations in 1888, and the defendant company has maintained the road to date.
It established and maintains a depot in Shreveport.
After the city ordinance had granted the right of way, the company went into possession of the 100-foot strip of land between Cotton and Texas streets, a possession the company now holds. This strip has been filled by the defendant company with earth and graded to the level of Common street. It is surfaced with gravel. It has underground drainage pipes to carry off all rainwater and drainage from Common street and other connecting streets, from Cotton and Texas streets, inclusive.
The work cost over $13,000. It appears that this strip is occupied by the railroad tracks, with a space between the tracks used for the purpose of delivering car loads of freight by the defendant company from its cars to the various consignees in Shreveport; that there are no houses or permanent structures of any kind on this strip, except the tracks, which are laid practically on the level of the street.
*457 It also appears that this track was temporarily laid in accordance with an ordinance of the city council. It was subsequently made permanent, and the right arising therefrom was confirmed to the defendant company in consideration of 1,200 car loads of gravel, which were delivered to the city of Shreveport and used by the city in the improvement of its streets.
It is further admitted that the Red River Valley Company, by virtue of right of way from the city and expropriation proceedings against defendant company, laid a track inside of and just east of and along the first-mentioned track of defendant company, and that subsequently, in order to promote the convenience and interest of both of these companies, the tracks were, with the consent and authority of the city council, exchanged one for the other, and the defendant company owns and operates its own tracks and the Red River Valley its own, both on this strip.
It is also admitted that, at the high stages of water, the river rises to within 2 or 3 feet of the top of the embankment along the 100-foot strip.
The following is in substance one of the sections of one of the ordinances under which the defendant holds. The right is subject to the condition that defendant shall not obstruct street crossings, nor drainage, and that it shall construct and maintain its crossings for the public use. Its tracks along Commerce street are to be laid on street grade, so as to facilitate the crossing or use of this street by vehicles. In another section of this ordinance it was provided that grantee should fill and pave with approved material Commerce street between stated points and near block 62, as per map.
The defendant company has complied with its obligations as a grantee. The agent of the defendant company testified that the defendants have three tracks on this strip of land in question in general use, and that they are all necessary. The map in evidence shows the three railroad tracks occupied by defendant.
There is an elliptical space in the center used for delivering freight. We are informed by the testimony that the accretion in front of Commerce street has to some extent changed the course of the river. In former times steamboats landed freely about this space. Of late years only small craft land about that point, by reason of the fact that the change in the course of the river has rendered landings there difficult.
About two years ago the batture in front of Commerce street was surveyed by the city engineer under direction of the town council, and subdivided into lots. Some of these lots have since been leased by the council.
There is testimony to the effect that at one time Milam street extended to the river. This was controverted by defendant, by the weight of the testimony. This fact about an open and continuous street is referred to only as showing that there are persons familiar with the locality who said under oath that it was a public street extending to the river not very many years ago.
Milam street is unquestionably open to Commerce street; and it projects over this last-named street to the western line of the railroad track in question, and on the other side — that is, the eastern line of that street— it projects to the river.
Originally the whole front on Commerce street, including the railroad track, was considered public property and under the control and administration of the city.
Plaintiff in. suit avers that the right of the defendant company to operate its right along said street and lay tracks thereon is subject to such “rules, regulations, and ordinances as are or may be required by said city.”
Plaintiff also avers, and the testimony sustains the fact alleged, that frequently the passageway over this track opposite Milam street is completely blocked by standing cars.
*458 Plaintiff asks in the prayer of the petition that the defendant company be directed to move' all obstruction on Milam street at its intersection with Commerce street, and between said intersection and Red river, and more especially to remove the cars with which said street is now blocked, and enjoin said company from further blocking said Milam street at said intersection, except-at such times as such blocking is necessary to the movements of its trains.
It is evident enough that Milam street is open to Commerce street. Originally the whole front of Commerce street, including as well the railroad track, was batture.
The right of defendant was acquired from the city of Shreveport. Of course, it does not question the authority from which it derived its right. The issue is confined to the scope of the grant of the city.
At the - date of the grant the whole front was free to the public. After these tracks were laid, the freedom was restricted by the terms of the ordinance.
We infer that the city of Shreveport never intended to surrender her administration over the streets.
The ordinance failed in express words to reserve the passageway at Milam street; but even then, we infer, that it was not the intention to permit the river front at this point to be completely closed to all communication with the river. We take it that this street is one of the important avenues of the city. In all the maps its course is indicated as extending to the river, interrupted only by the small strip over which the defendant has its right of way.
, We do not suppose that it was the wish of the defendant to appropriate absolutely as its own property the strip on which its track is laid.
If it was its wish, it did not have the power, in view of adverse law to such ownership. It has acquired valuable and important rights thereon, of which it cannot be deprived. Whatever rights the defendant has acquired to these tracks, they do not extend beyond the limits of the strip. It includes no right to either side, much less any right to the river bank on the east of the track.
Can it be held that the city council gave up or surrendered all use of passageway to the river?
That is not our interpretation of the ordinance. Something may have been overlooked. Words at this time may be slightly confusing. We are none the less convinced, after having considered the ordinances and the circumstances of 'their adoption, that it never entered into the contemplation of the city authorities to thus grant. We are not unmindful of the fact that the railroad company has acquired a use for fair consideration, that it has raised and leveled the land, and that it has made it possible for two blades of grass to grow where perhaps none grew before; and for these reasons we do not think that its rights should be curtailed or injuriously restrained. But we take it that this view can be taken, the railroad company can use its own, and that, on the other hand, the public can be allowed to pass to and from the river.
We pass from a consideration of the jurisprudence bearing upon the subject of riparian rights, and to a consideration of the organic law bearing upon the subject. We will refer to the latter first.
It provides that riparian owners on navigable streams, in cities, shall have the right to erect improvements on the batture and banks upon obtaining the consent of the governing authority; and these improvements, as well as the batture and banks, are to remain subject to the administration and control of the city. Article 290 of the Constitution.
The defendant is really not a riparian owner. We refer to this article as sustaining the view that the riparian owner, who retains some rights to the banks of a navig *459 able river, is subject to tbe administration and control of the city.
■ Many years prior to the date of the adoption of the Constitution of 189S this court held that the city has the right of control over the river banks (Newgass v. City of New Orleans, 42 La. Ann. 164, 7 South. 505, 21 Am. St. Rep. 308), a rule which applies as well to Shreveport, where the res is, as to the city of New Orleans.
A moment ago, in the course of the discussion, we said that the defendant was not a riparian owner. But, if defendant should be considered a riparian owner, its rights would not be greater; for riparian proprietors never acquire complete dominion. Leonard’s Heirs v. City of Baton Rouge, 39 La. Ann. 275, 4 South. 241; Pecot et al. v. Police Jury, 41 La. Ann. 706, 6 South. 677.
Again, in the order of things, the public has a right of way along navigable streams. We conclude it is not within the power of the municipality or of the riparian owner to cut the public off entirely from all communication with a navigable stream upon which rests a city. Sweeney v. Shakspeare, Mayor, 42 La. Ann. 614, 7 South. 729, 21 Am. St. Rep. 400.
The owners of a batture in New Orleans claimed compensation for a street which had ■been laid on the batture under city authority. In passing upon the claim, the court held that the owners of a batture, who inclose it, “are bound to open to private use, free of charge, the space required by the corporation for public highways and streets.” Massey v. Steeg, 13 La. Ann. 350. In a case of a prior date the owner had sought compensation for his land: The court said, quoting:
“We would be inclined to the opinion that the plaintiff would be entitled to very little, if any, compensation for the public use of the soil of the street on the batture.” Remy v. Municipality No. Two, 12 La. Ann. 502.
We have cited these decisions as evidence of the trend of the decisions. State v. Board of Levee Commissioners, 109 La, 411, 33 South. 385; Shreveport & Red River Valley R. R. Co. v. St. Louis S. W. R. R. Co., 51 La. Ann. 824, 25 South. 424.
We repeat, the defendant as a grantee in good faith should not lose any of its privileges. While mindful of this, it cannot be recognized as an absolute owner, entitled to inclose the whole of the strip of land as if it were an absolute owner.
To this the right it claims would lead, if recognized without the least restraint. Before closing, we will state: It is not probable, had the ordinance and the law clothed defendant with absolute ownership of the strip, that it would have consented to plaintiff retaining the right to administer and control.
The management of defendant must be credited with too much judgment and ability to suspect that it would have entered into any” such agreement if it could have done otherwise. The argument of able counsel for defendant, pressed upon our attention, is that the council had not sufficiently ordained in regard to their demand to enable them to stand in judgment; that is, that the city council passed no ordinance ordering Milam street to be opened to the river. True, there was no ordinance directly passed touching the subject.
It remains that the council directed the civil engineer to survey and lay out Milam street, and afterward the survey remained unquestioned. The plat of the survey is in evidence.
The action of plaintiff was brought to have the ordinance above referred to construed.
These facts present a cause of action.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be reversed, annulled, and avoided. For reasons stated, it is further ordered, adjudged, and decreed that the writ of injunction sued out be made perpetual, and the said company is directed, also its agents and em *460 ployés, to move obstructions on Milam street at its intersection with Commerce street, and between the intersection and Red river, and especially to move the ears with which said street is now blockaded, and enjoining said company from further blockading Milam street at its intersection, except at such times that such blockading is necessary in the movement of its trains. It is hereby decreed that said Milam street be kept open at said intersections, so as to give the public free access to the property located east of said track to the river front, and that defendant and appellee pay costs of both courts.